ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| ASOCIACIÓN DE CONDÓMINOS AZURE BEACH  Recurrente  v.  OFICINA DE GERENCIA DE PERMISOS DIVISIÓN DE REVISIONES ADMINISTRATIVAS;  GK REALTY, LLC, DEFENSORES ÁREA COSTERA, INC., CONCILIO DE PRESERVACIÓN COSTERA, INC.  Recurridos  OFICINA DE PERMISOS MUNICIPIO AUTÓNOMO DE SAN JUAN Agencia que emite el Permiso | KLRA202300001 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina de Gerencia de Permisos  Caso Núm.  2019-262094-PCOC-025787  Revisión Núm.  2019-268691-SDR-009970  2022-452025-SDR-009971  2022-452012-SDR-009972 |

Panel integrado por su presidenta, la Juez Barresi Ramos, la Jueza Rivera Pérez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de octubre de 2024.

Comparece ante nos, la Asociación de Condóminos Azure Beach (en adelante, Azure o parte recurrente), para solicitarnos que revisemos y revoquemos la *Resolución* dictada y notificada el 2 de diciembre de 2022 que fue emitida por la Hon. Jueza Administrativa Rosalía Cruz Niemiec en el caso consolidado *GK-Realty, LLC; Defensores Área Costera, Inc.; Concilio de Preservación Costera, Inc. v. Oficina de Permisos Municipio Autónomo de San Juan*, Núm. 2019-

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Sol de Borinquen Cintrón Cintrón.

268691-SRD009970; 2022-452025-SRD-009971 y 2022-452012-SRD-009972. En virtud de la aludida *Resolución*, la Jueza Administrativa declaró *Ha Lugar* tres revisiones administrativas consolidadas impugnando el permiso de construcción, (en adelante, PCOC), 2019-262094-PCOC-025787. En adición Azure, también nos solicita que determinemos la inconstitucionalidad de la Sección 6.4.2.2b del Reglamento Conjunto de Permisos, 2020.

Las partes recurridas GK-Realty, LLC, (en adelante, GK Realty); Defensores Área Costera, Inc. (en adelante DAC); Concilio de Preservación Costera, Inc. (en adelante Concilio), comparecieron ante nos, mediante sus respectivos alegatos.

Con el beneficio de la comparecencia de las partes, el derecho aplicable y por los fundamentos que exponemos a continuación, se *confirma* la *Resolución* recurrida.

-I-

El 27 de mayo de 2022 Azure, radicó una solicitud de permiso de construcción ante la Oficina de Permisos del Municipio de San Juan (en adelante, MSJ), a través del *Single Business Portal.*[2] En el *Memorial Explicativo* del proyecto que acompañó la referida solicitud, Azure expuso que el proyecto comprendía tres (3) fases para estabilizar la costa que colinda con el condominio. La primera de estas proponía la instalación de bolsas geotextiles rellenos de arena frente al muro que divide el condominio de la zona marítimo terrestre (en adelante, ZMT).[3] La segunda incluía la construcción de un revestimiento de piedras frente al referido muro.[4] La última conllevaba la construcción de un deflector de olas sobre el muro existente.[5] La solicitud incluyó una Determinación de Cumplimiento

---

[2] Apéndice del Recurso de Revisión Judicial, págs. 1-96.
[3] *Íd.*, págs. 9-11.
[4] *Íd.*
[5] *Íd.*

Ambiental para Evaluación Ambiental de la Oficina de Gerencia de Permisos (en adelante, OGPe) expedida el 28 de marzo de 2022.[6]

Luego de varios trámites que incluyeron enmiendas a los planos y radicación de documentos, el MSJ aprobó el proyecto de construcción el 15 de julio de 2022 bajo el permiso número 2019-262094-PCOC-025787.[7]  Posteriormente, el 19 de julio de 2022 Azure sometió una enmienda al referido permiso para que se cambiara la descripción del proyecto, toda vez que su solicitud fue a los fines de que se les permitiera construir un deflector de olas y no para la construcción de un revestimiento.[8]

El 4 de agosto de 2022, GK Realty, Concilio y DAC radicaron sus respectivas solicitudes de *Recurso de Revisión y* de *Celebración de Vista* ante la División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (en adelante, DRA-OGPe).[9] En estas, impugnaron el permiso por permitir la construcción dentro de la ZMT y sin contar con la autorización del Departamento de Recursos Naturales (en adelante, DRNA) o con una Declaración de Impacto Ambiental (en adelante, DIA).

El 9 de agosto de 2022, Azure presentó una *Oposición a Solicitud de Revisión Administrativa y Vista Pública,* respecto a los escritos precitados.[10] En resumen, arguyó que la descripción del texto del PCOC sobre el revestimiento, surgió "por un error técnico" y que al percatarse del error solicitó la aclaración del texto.[11] Además, sostuvo que la solicitud del permiso fue radicada con el único objetivo de que se le permitiese construir el deflector de olas sobre el muro existente y que éste solo requería un permiso de

---

[6] *Íd.*, págs. 3-8.
[7] *Íd.*, pág. 97-103; La descripción del proyecto que surge del permiso aludido es la siguiente: "Construir un revestimiento de 155 pies de largo y aproximadamente de 12 a 15 pies de ancho para brindar protección contra la socavación a largo plazo".
[8] Es menester destacar que la referida enmienda, no obra en el expediente ante nos.
[9] Apéndice del Recurso de Revisión Judicial, págs. 104-162.
[10] *Íd.*, págs. 163-167.
[11] *Íd.*

construcción del MSJ.[12] Añadió que la aludida construcción no recaía sobre terrenos de dominio público o aguas jurisdiccionales, por lo que no estaba sujeta a los permisos correspondientes del DRNA y/o del Cuerpo de Ingenieros del Ejército de los Estados Unidos.[13] El 16 de agosto de 2022, la parte recurrente se opuso a la petición de Concilio a través del escrito intitulado *Oposición a Solicitud de Intervención, Oposición, Reconsideración y Vista Pública.*[14]

El 19 de agosto de 2022, la DRA-OGPe acogió por separado las solicitudes de Revisión Administrativa Núm. 2019-268691-SDR-009970, 2022-452025-SDR-009971 y 2022-452012-SDR-009972.[15] Sin embargo, el 30 de agosto de 2022 fueron consolidadas.[16] Más adelante, DRA-OGPe celebró vistas administrativas en las siguientes fechas: 16 de septiembre de 2022, 7, 14 y 26 de octubre de 2022 y 9 de noviembre del mismo año.[17] El MSJ no compareció a ninguna de las vistas celebradas, a pesar de haber sido debidamente citado.[18] Por su parte la parte recurrente y Tetra Tech,[19] no presentaron prueba testifical.[20]

Superados varios asuntos procesales, el 2 de diciembre de 2022, la DRA-OGPe emitió la *Resolución* recurrida.[21] En esencia, declaró *Ha Lugar* las Revisiones Administrativas consolidadas y dejó sin efecto el PCOC.[22] La DRA-OGPe concluyó que las partes recurridas demostraron en las vistas de revisión que son colindantes del sector y que tienen interés en el permiso de construcción

---

[12] *Íd.*
[13] *Íd.*
[14] *Íd.*, págs. 177-190.
[15] *Íd.*, págs. 191-200.
[16] *Íd.*, págs. 201-204.
[17] *Íd.*, págs. 327-360.
[18] *Íd.*
[19] Compañía que Azure alega haber contratado para llevar a cabo el procedimiento de solicitar el permiso de construcción en controversia. Véase, Apéndice del Recurso de Revisión Judicial, pág. 2.
[20] Apéndice del Recurso de Revisión Judicial, págs. 327-360.
[21] *Íd.*
[22] *Íd.*

expedido por el MSJ. [23] También**, expuso que no obraba en el expediente documento alguno del Consejo de Titulares del Condominio Azure Beach o de la Asociación de Condómines Azure Beach que acreditara que el Sr. Raj Mundkur fuera su presidente, o del cual surgiera su autoridad para representarle o para delegar la presentación del permiso de construcción objeto de revisión a Tetra Tech**.[24] Por lo tanto, concluyó que el permiso adolecía de nulidad.[25]

Asimismo, la DRA-OGPe precisó que la prueba demostró que la solicitud del permiso de construcción emitido por el MSJ contenía información inconsistente en cuanto a la calificación, zona de interés turístico, zona de inundabilidad, y zona marítimo terrestre.[26] De igual forma, determinó que la prueba pericial demostró que era necesario contar con las autorizaciones del DRNA, la Compañía de Turismo, y la Junta de Planificación. [27] También, resolvió que ya el deflector de olas estaba construido y que una parte de este estaba fuera del muro propiedad de Azure y se proyectaba hacia la playa. Añadió que existían inconsistencias en cuanto a lo solicitado por Azure y lo aprobado en el permiso de construcción.[28] Finalmente, resolvió que las partes ahora recurridas derrotaron la presunción de corrección que permeaba la determinación del MSJ, por lo que dejó sin efecto el permiso de construcción objeto de revisión.[29]

Inconforme con el aludido dictamen, el 3 de enero de 2023, Azure presentó el recurso que nos ocupa, en el cual le imputó a DRA-OGPe los siguientes errores:

> PRIMER SEÑALAMIENTO: ERRÓ LA DRA-OGPE AL DETERMINAR QUE LAS RECURRIDAS TENÍAN LEGITIMACIÓN ACTIVA PORQUE "DEMOSTRARON EN LAS VISTAS DE REVIS[I]ÓN [...] QUE SON

---

[23] *Íd.*
[24] *Íd.*
[25] *Íd.*
[26] *Íd.*
[27] *Íd.*
[28] *Íd.*
[29] *Íd.*

COLINDANTES O DEL SECTOR, Y QUE TIENEN INTERÉS EN EL PERMISO DE CONSTRUCCIÓN EXPEDIDO POR EL MUNICIPIO". EN LA ALTERNATIVA, ERRÓ LA DRA-OGPE AL PERMITIRLE A LAS RECURRIDAS PRESENTAR EVIDENCIA DE SU LEGITIMACIÓN POR PRIMERA VEZ DURANTE LA VISTA ADMINISTRATIVA, EN VIOLACIÓN A LOS REQUISITOS DEL REGLAMENTO CONJUNTO Y LA DOCTRINA QUE ESTABLECIÓ EL TRIBUNAL SUPREMO DE PUERTO RICO.

SEGUNDO SEÑALAMIENTO: ERRÓ LA DRA-OGPE AL DETERMINAR QUE NO PROCEDÍA LA DESESTIMACIÓN DE LAS SOLICITUDES DE REVISIÓN ADMINISTRATIVA POR FALTA DE NOTIFICACIÓN A LA OGPE COMO AGENCIA RECURRIDA, CUANDO -EN SUS RECURSOS DE REVISIÓN Y DURANTE LA VISTA ADMINISTRATIVA- LAS RECURRIDAS REPETITIVAMENTE PLANTEARON QUE LA DETERMINACIÓN DE CUMPLIMIENTO AMBIENTAL FUE INSUFICIENTE POR ESTAR BASADA EN UNA EVALUACIÓN AMBIENTAL EN LUGAR DE UNA DECLARACIÓN DE IMPACTO AMBIENTAL.

TERCER SEÑALAMIENTO: ERRÓ LA DRA-OGPE AL DETERMINAR QUE "LE ASISTE LA RAZÓN" A LAS RECURRIDAS EN TORNO A LOS ARGUMENTOS EN SU MOCIÓN SOBRE NULIDAD DEL PERMISO POR DOS RAZONES PRINCIPALES. PRIMERO, LAS RECURRIDAS PRESENTARON SUS MOCIONES FUERA DEL TÉRMINO JURISDICCIONAL PARA SOLICITAR REVISIÓN- POR LO QUE LA DRA-OGPE NI SIQUIERA DEBIÓ EVALUAR LA MOCIÓN SOBRE NULIDAD DEL PERMISO. Y, SEGUNDO, EL ARGUMENTO DE LAS RECURRIDAS A LOS EFECTOS DE QUE EL PRESIDENTE DE LA ASOCIACIÓN DE CONDÓMINES NO HABÍA SIDO AUTORIZADO POR EL CONSEJO DE TITULARES PARA MANEJAR LA SOLICITUD DEL PERMISO DE CONSTRUCCIÓN CARECE DE TODO MÉRITO.

CUARTO SEÑALAMIENTO: LA APLICACIÓN DE LA SECCIÓN 6.4.2.2B DEL REGLAMENTO CONJUNTO DE PERMISOS AL CASO DE AUTOS ES ARBITRARIA Y CAPRICHOSA, VIOLA EL DERECHO AL DISFRUTE DE LA PROPIEDAD DE AZURE, Y ES ULTRA VIRES, PUES EXCEDE LA AUTORIDAD QUE LE DELEGÓ EL LEGISLADOR A LA AGENCIA, POR LO CUAL ERRÓ LA DRA-OGPE AL DETERMINAR QUE "LA SOLICITUD DEL PERMISO DE CONSTRUCCIÓN EMITIDO POR EL MUNICIPIO CONTENÍA INFORMACIÓN INCONSISTENTE EN CUANTO "A ZONA MARÍTIMO TERRESTRE".

QUINTO SEÑALAMIENTO: ERRÓ LA DRA-OGPE AL NO DARLE DEFERENCIA AL MUNICIPIO DE SAN JUAN AL DETERMINAR QUE, PARA CONSTUIR EL DEFLECTOR DE OLAS SOBRE EL MURO EXISTENTE, "ERA NECESARIO CONTAR CON LAS

AUTORIZACIONES DEL DRNA, LA COMPAÑÍA DE TURISMO Y LA JUNTA DE PLANIFICACIÓN", Y AL CONCLUIR QUE "UNA PEQUEÑA PARTE [DEL DEFLECTOR DE OLAS] ESTÁ [...] EN LA PARTE DE LA ORILLA DE LA PLAYA.

SEXTO SEÑALAMIENTO: LAS DETERMINACIONES DE HECHO RELATADAS EN LA RESOLUCIÓN DE REVISIÓN ADMINISTRATIVA, EN AQUELLAS QUE RESUMEN LA PRUEBA TESTIFICAL SON, EN MÚLTIPLES INSTANCIAS, INCONSISTENTES CON EL TESTIMONIO VERTIDO DURANTE LAS VISTAS ADMINISTRATIVAS. LO ANTERIOR, HACE NECESARIO QUE ESTE HONORABLE FORO REVISE UNA TRANSCRIPCIÓN DEL EXPEDIENTE GRABADO O ESCUCHE LAS GRABACIONES DE MANERA QUE PUEDA REVISAR LAS DETERMINACIONES DE HECHO CORRESPONDIENTES.

## -II-

### -A-

La doctrina de justiciabilidad es un "mecanismo usado por los tribunales para delimitar su propia jurisdicción y no adentrarse en los dominios de otras ramas de gobierno, y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado". *Hernández Torres v. Hernández Colón et al.*, 131 DPR 593, 598 (1992). Por ello, en *Fund. Surfrider y otros v. A.R.P.e.*, 178 DPR 563, 571-572 (2010), el Tribunal Supremo estableció que "el poder de revisión judicial sólo puede ejercerse en un asunto que presente un caso o controversia, y no en aquellas circunstancias en que se presente una disputa abstracta cuya solución no tendrá consecuencias para las partes".

Una de las doctrinas de autolimitación judicial que se deriva del principio de "caso o controversia" es la legitimación de la parte que acude ante el foro judicial en busca de un remedio. *Íd.*, pág. 572. Para tener legitimación activa, el litigante tiene que demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre la acción que se ejercita y el daño alegado, y (4) la causa de acción debe surgir al amparo de la Constitución o de

alguna ley. *Col. Peritos Elec. v. A.E.E.,* 150 DPR 327, 331 (2000). Estos requisitos también son aplicables dentro del ámbito del derecho administrativo tras una solicitud de revisión judicial. *Fund. Surfrider y otros v. A.R.P.e., supra,* pág. 572.

Ciertamente, una asociación tiene legitimación para solicitar la intervención judicial por los daños sufridos por la agrupación y para vindicar sus derechos como entidad. *Íd.* No obstante, su legitimación queda sujeta a que demuestre un daño claro, palpable, real, inmediato, preciso, no abstracto o hipotético. *Íd.* También, puede acudir al foro judicial a nombre de sus miembros, aunque esta no haya sufrido daños propios. *Íd.,* pág. 573.

En el caso de que se acuda en revisión judicial para cuestionar la actuación de una agencia, toda persona natural o jurídica tiene que demostrar que goza de legitimación activa a base de las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, (citas omitidas).[30] **"Es imperativo que el recurrente satisfaga el requisito de legitimación al presentar el recurso de revisión judicial".** *Íd.,* pág. 574. (Énfasis suplido).

En específico, los criterios de legitimación para acudir en revisión judicial están contenidos en la sección 4.2 de la Ley Núm. 38-2017, 3 LPRA secs. 9601 y 9672, mejor conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico. En lo pertinente, le confiere legitimación para presentar el recurso de revisión judicial a una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente. *Íd.* A su vez, la sección 1.3

---

[30] La Ley Núm. 38-2017, 3 LPRA sec. 9601, según enmendada, y mejor conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, derogó la Ley Núm. 170- 1988. En lo pertinente la acción de legitimación activa que se relaciona al caso antes citado, es una expresión de nuestro más alto foro sobre la legitimación activa. *Fund. Surfrider y otros v. A.R.P.e., supra,* pág. 574.

de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA Sec. 9603, define parte como "toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento". Conforme a ello, es parte, para efectos de la revisión judicial, la persona objeto de la acción administrativa. *Fund. Surfrider y otros v. A.R.P.e.*, *supra*, pág. 576. Por último, significa toda persona natural o jurídica de carácter público o privado que no sea una agencia.[31]

**-B-**

Mediante la aprobación de la Ley de Condominios de Puerto Rico, Ley 129-2020, 31 LPRA sec. 1921, *et seq.,* según enmendada, se ejecutó el propósito de viabilizar la propiedad individual sobre una unidad de apartamento, que forma parte de un inmueble sometido al régimen de propiedad horizontal. De este modo, se estatuyó el derecho de cada titular a disfrutar del pleno disfrute de este, y de las áreas comunes establecidas, siempre que no resulte en menoscabo de las prerrogativas de los demás titulares. 31 LPRA Sec. 1921a.

Por un lado, el artículo 18 de la Ley Núm. 129-2020, *supra,* establece lo siguiente:

> Las obras necesarias para la conservación o seguridad del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares. Si las de uso eficaz menoscabasen el disfrute de algún titular en particular, éstas no podrán realizarse sin el consentimiento del titular afectado. La objeción del titular afectado deberá estar fundamentada.
> **Para toda otra obra que afecte en forma adversa los elementos comunes del inmueble se requerirá el consentimiento de dos terceras partes (2/3) de los**

---

[31] El Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto de 2020) aplicable a la controversia, contiene un lenguaje análogo al de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *supra*, por lo que entendemos que el análisis de la Opinión citada es aplicable al presente caso.

**titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes. No se podrá realizar obra alguna que afecte la solidez y estructura del edificio.** 31 LPRA sec. 1921q. (Énfasis suplido).

En lo pertinente, el artículo 48 de la Ley 129-2020, *supra,* provee como sigue:

[…]

**El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. Estará integrado por todos los titulares. Sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio.**

El Consejo de Titulares tendrá personalidad jurídica propia y de sus obligaciones frente a terceros, responderán los titulares de forma subsidiaria y sólo con su apartamento. […]. 31 LPRA Sec. 1922t. (Énfasis suplido).

Por último, destacamos el artículo 49- Consejo de Titulares- Poderes y Deberes, en específico los siguientes incisos:

Corresponde al Consejo de Titulares:

**d) Aprobar la ejecución de obras extraordinarias y mejoras y recabar fondos para su realización.** El presupuesto anual incluirá una partida de fondo de reserva que no será menor del cinco por ciento (5%) del presupuesto total de gastos del condominio para ese año. La aportación se depositará mensualmente en la cuenta independiente de reserva a base de lo que hubiera sido el recaudo de las cuotas de mantenimiento del mes transcurrido. (Énfasis suplido).

[…]

**2.** *Obras Urgentes.* — El Director, Presidente y/o el Tesorero podrán realizar retiros del fondo de reserva para toda obra urgente no prevista en el presupuesto anual, **previa autorización mayoritaria del Consejo de Titulares debidamente convocado en asamblea extraordinaria para atender este asunto específico**. La asamblea para autorizar el desembolso se convocará y celebrará en un término expedito no menor de veinticuatro (24) horas. La notificación podrá ser mediante entrega personal, debajo de cada puerta o por cualquier medio alterno disponible, incluyendo correo electrónico. (Énfasis suplido).

[…]

**4.** *Obras para Atender Estado de Emergencia.* — **El Director, el Presidente y/o el Tesorero podrán realizar retiros del fondo de reserva para todo gasto operacional para atender un "Estado de Emergencia", previa autorización mayoritaria del Consejo de Titulares debidamente convocado en asamblea extraordinaria para atender este asunto específico.** La asamblea para autorizar el desembolso se convocará y celebrará en un término expedito no menor de veinticuatro (24) horas. La notificación de convocatoria para asamblea extraordinaria para aprobar

el desembolso podrá ser mediante entrega personal, debajo de cada puerta o por cualquier medio alterno disponible, incluyendo correo electrónico. **Se entenderá que existe un "Estado de Emergencia" cuando así lo decreten las autoridades estatales o federales.** (Énfasis suplido).

**-C-**

La Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.*, mejor conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, según enmendada, provee el marco jurídico para la solicitud, evaluación, concesión y denegación de permisos en el Gobierno de Puerto Rico. A esos fines, dicha ley también sufrió enmiendas por la Ley Núm. 38-2017, 3 LPRA sec. 9601, mejor conocida como la Ley de Procedimientos Administrativos Uniforme, y por la Ley Núm. 75-1975, 23 LPRA sec. 62, también conocida como Ley Orgánica de la Junta de Planificación de Puerto Rico.

Así las cosas, la Junta de Planificación adoptó mediante la Resolución JP-RP-39 de 1 de diciembre de 2020, el Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, (en adelante Reglamento Conjunto).

En lo pertinente, en la Regla 2.1.9.5 sobre la Legitimación Activa sobre las solicitudes, podemos encontrar lo siguiente:

a. **Toda solicitud relacionada al desarrollo y uso de terrenos en Puerto Rico, cualquier otra autorización o trámite definido en este Reglamento, será promovida por el dueño, optante o arrendatario de la propiedad con autorización, por sí o a través de su representante autorizado por el Jefe de la Agencia o su representante autorizado en caso de un proyecto público**. Aquellas solicitudes presentadas al amparo de lo dispuesto en la Ley Núm. 135 de 15 de junio de 1967, según enmendada, conocida como "Ley de Certificaciones" (Ley Núm. 135), serán promovidas exclusivamente por los profesionales designados en dicha Ley. (Énfasis suplido).

**-III-**

En el presente caso, compareció ante nos la Asociación de Condóminos Azure Beach solicitando que revoquemos la *Resolución* de la DRA-OGPe que tuvo como resultado la anulación del permiso de construcción 2019-262094-PCOC-025787. Comenzaremos por el señalamiento de error número tres (3), donde en esencia sostiene:

> Erró la DRA-OGPE al determinar que "le asiste la razón" a las recurridas en torno a los argumentos en su moción sobre nulidad del permiso por dos razones principales. Primero, las recurridas presentaron sus mociones fuera del término jurisdiccional para solicitar revisión- por lo que la DRA-OGPE ni siquiera debió evaluar la moción sobre nulidad del permiso. Y, segundo, el argumento de las recurridas a los efectos de que el presidente de la asociación de condómines no había sido autorizado por el consejo de titulares para manejar la solicitud del permiso de construcción carece de todo mérito.

Es norma reiterada que, como celosos guardianes de nuestra jurisdicción, estamos obligados a considerar *motu proprio,* o a petición de parte, todo asunto relativo a nuestra jurisdicción, pues carecemos de discreción de asumirla donde no la hay. *Romero Barceló v. ELA,* 169 DPR 460, 470 (2006). Consecuentemente, y previo a cualquier ulterior análisis, precisa analizar y determinar si, en efecto, las partes y la controversia ante nuestra consideración cumplen con los requisitos de justiciabilidad, particularmente, en su vertiente de legitimación activa, los cuales conforman criterios indispensables de nuestra jurisdicción.

Del expediente ante nuestra consideración, se desprende en la Escritura Número (2), Escritura Matriz de Constitución al Régimen de Propiedad Horizontal del Condominio Azure Beach, otorgada ante el notario Miguel L. Torres Torres el 30 de agosto de 2011, lo siguiente:

> Dedicación al Régimen de Propiedad horizontal
>
> ---NOVENO: La propietaria por medio del presente instrumento, como titular y dueño de la Parcela descrita en el párrafo PRIMERO anterior y del CONDOMINIO AZURE BEACH hace declaración expresa de someter, y por la presente somete, el

inmueble existente antes descrito y lo organiza en un Régimen de Propiedad Horizontal, el cual se regirá por las disposiciones de la  Ley de Condominios, y de cualesquiera otras leyes y reglamentos sobre la materia, así como por la presente escritura, por el "Reglamento de Administración y Co-Propiedad del Condominio Azure Beach", (en adelante, el "Reglamento") que se hace formar parte de esta escritura como el "Anejo A", para que el Condominio se rija por éstas y por los acuerdos válidos que puedan ser adoptados por el "Consejo de Titulares" y la "Junta de Directores del Condominio.[32]

Nótese que del expediente ante nos, surge que el dueño de la parcela donde se construyó el Condominio Azure Beach es Playa Almendro, Inc. Esta edificación fue sometida, junto a sus elementos comunes, al régimen de propiedad horizontal, entre ellos, el terreno donde se encuentra el edificio. Por lo tanto, el sujeto con derecho o entidad con legitimación activa en este caso es el Consejo de Titulares Condominio Azure Beach, entidad distinta a la Asociación de Condómines Azure Beach, y quien no es la parte que acude ante nos.

Según se desprende expresamente de la carta suscrita por el señor Raj Mundurk destacamos lo siguiente:

January 25, 2022

To Whom it May Concern:

I, Raj Mundurk, President of the Board of Asociación Condómines Azure Beach, authorize Tetra Tech and its representatives to carry out all the procedures with the Government of Puerto Rico, Municipality of San Juan and Federal Agencies with jurisdiction in the regulatory process related  to the Shoreline Stabilization Measures at Asociación Condómines  Azure Beach, Calle Almendro, Punta Las Marías, Puerto Rico.

**Raj Mundurk** (Firma illegible)
Asociación Condómines Azure Beach
Raj Mundurk, President
No. 1 Calle Almendro
Punta Las Marías
San Juan, Puerto Rico, 00913.[33]

---

[32] Anejo 1 del Recurso de Revisión Judicial, pág., 002. Anejos 4 y 6 del Alegato de la Parte Recurrida GK Realty (Escritura núm. 20), págs. 042- 079 y 091- 128.
[33] *Íd.*

Como vemos de la transcripción literal de la carta suscrita por el señor Raj Mundurk, no se cumplen los criterios establecidos en la Ley Núm. 129-2020, en lo específico lo dispuesto en los artículos 48 y 49, *supra,* respectivamente. En esencia, no surge del expediente ante nos, que, el Consejo de Titulares autorizara o delegara tales acciones al presidente señor Raj Mundurk. Por otro lado, si tomáramos como cierto la alegación de que la Asociación de Condómines de Azure Beach autorizó al señor Raj Mundurk en esta delegación de poderes, tal acción no está evidenciada en el expediente ante nos. Principalmente, sería totalmente contraria a los propósitos con los poderes conferidos al Consejo de Titulares establecidos por la Ley Núm. 129-2020

Por otro lado, tampoco surge documento alguno que acredite que la parte recurrente sea su representante autorizado. Por último y no menos importante, una carta firmada por el presidente de la Junta de la Asociación de Condómines Azure Beach, confiriendo autoridad a un tercero para representar al Consejo de Titulares, es totalmente contrario a lo que promueve la Ley de Propiedad Horizontal, *supra,* lo que implica que no tienen legitimación activa. Por lo tanto, la Asociación de Condómines Azure Beach está impedida de reclamar como suyas las facultades y autoridad conferidas al Consejo de Titulares. *No se cometió el error señalado.*

Debido a la determinación arribada en el presente recurso, se hace innecesario la discusión de los restantes señalamientos de error.

**-IV-**

Por los fundamentos antes expresados, los cuales hacemos formar parte de este dictamen, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones